UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JANICE SERGEANT and THOMAS SERGEANT,<br><br>Plaintiffs,<br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | CASE NO. C17-5232 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING PLAINTIFFS LEAVE TO AMEND |

This matter comes before the Court on Defendant Carrington Home Mortgage, LLC's ("Carrington") motion for judgment on the pleadings (Dkt. 42). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On March 29, 2017, the Sergeants filed a complaint against Defendant Bank of America, N.A. ("BANA"), Carrington, and all others claiming an interest in the property described in the complaint. Dkt. 1.

On May 8, 2017, BANA moved to dismiss the Sergeants' claims for a violation of the Washington State Consumer Protection Act ("CPA"), a violation of the Equal Credit Opportunity Act ("ECOA"), and the tort of outrage. Dkt. 14. On June 14, 2017, the Court granted the motion, dismissed part of the Sergeants' ECOA claim with prejudice,

and granted the Sergeants leave to amend their CPA and outrage claims. Dkt. 23. In relevant part, the Court stated as follows:

> The most glaring deficiency in the complaint is that it doesn't contain a short and plain statement of each claim. *See* Fed. R. Civ. P. 8. Instead, the complaint is 48 pages of compound factual allegations, legal conclusions, and citations to authorities. The Sergeants have also attached three declarations and over 150 pages of exhibits to the complaint. Such an unnecessary document dump does nothing but needlessly waste both the defendants and the Court's time and resources to determine whether the Sergeants have asserted the minimal factual allegations to overcome a motion to dismiss. Even so, the Sergeants are entitled to leave to amend because it is not absolutely clear that the deficiencies identified above cannot be cured by additional factual allegations.

*Id*. at 6–7.

On July 7, 2017, the Sergeants filed an amended complaint ("AC"). Dkt. 24. Instead of heeding the Court's warning regarding "[t]he most glaring deficiency," the Sergeants submitted a 44-page complaint containing many of the same "compound factual allegations, legal conclusions, and citations to authorities" and citing the same voluminous exhibits they submitted with the original complaint. *Id*.

On July 7, 2017, BANA moved to dismiss the AC. Dkt. 25. On September 6, 2018, the Court granted the motion in part and denied it in part. Dkt. 33. The Court found that the Sergeants had alleged sufficient factual information to state a CPA claim, but dismissed the Sergeants' ECOA and outrage claims as a matter of law. *Id*. The ECOA claim was barred because the Sergeants were in default when they requested a loan modification. *Id*. at 6–8. The outrage claim was time-barred. *Id*. at 8–9. The Sergeants filed a motion for reconsideration and a petition for mandamus in the Ninth Circuit. Dkts. 34, 36. Both were denied. Dkts. 35, 39.

On January 11, 2018, Carrington filed a motion to dismiss the AC. Dkt. 42. On January 29, 2018, the Sergeants responded and submitted additional evidence. Dkt. 44. On February 2, 2018, Carrington replied and moved to strike the additional evidence. Dkt. 45.[1] That same day, the Sergeants filed a surreply arguing that Carrington's motion and reply require a finding of partial summary judgment in the Sergeants' favor on one element of their CPA claim and requesting that the Court strike Carrington's reply for impertinence and redundancy. Dkt. 46. On February 13, 2018, the Court denied the Sergeants' motion to strike. Dkt. 48.[2]

## II. FACTUAL BACKGROUND

In March 2009, the Sergeants obtained a refinance loan secured by their home. AC, ¶ 15. Servicing of the loan and the beneficial interest in the deed of trust was assigned to BANA. *Id*. ¶ 16. In May 2010, the Sergeants voluntarily ceased to make payments to BANA. *Id*. ¶ 24. Between then and July 2014, BANA initiated multiple foreclosure proceedings, the Sergeants submitted multiple loan modification requests, and the parties participated in a foreclosure mediation. *Id*. ¶¶ 25–41.

[1] The Court denies the motion to strike as moot because the CPA is dismissed for reasons unrelated to this evidence.

[2] The Sergeants' remaining request to enter partial summary judgment in their favor is frivolous and procedurally improper. A party may only file a surreply to request the Court to strike material in a reply brief. Local Rules, W.D. Wash. LCR 7(g). "Extraneous argument or a surreply filed for any other reason will not be considered." *Id*. 7(g)(2). Moreover, requests for affirmative relief must be made in a motion, not in the response or an improper surreply. *Id*. 7(b)(1), 7(k). Therefore, the Court denies the Sergeants' request to enter partial summary judgment.

In July 2014, BANA informed the Sergeants that the servicing of their loan would be transferred to Carrington. *Id*. ¶ 40. In October 2014, Carrington informed the Sergeants that they could re-apply for a loan modification. *Id*. ¶ 42. In March and April 2015, the Sergeants sent Carrington loan modification applications. *Id*. ¶¶ 43, 44. In June 2015, the Sergeants contacted Carrington to inquire about their applications. *Id*. ¶ 45. Carrington responded that the applications were denied on May 15, 2015. *Id*. ¶ 46. The Sergeants allege that they never received Carrington's denial letter and assert that Carrington sent the letter to their former lawyer. Dkt. 2, ¶ 45.

In August 2015, the Sergeants submitted a new loan modification application. AC, ¶ 47. In October 2015, Carrington denied the application because the Sergeants' home owners association ("HOA") had placed a lien on the house. *Id*. ¶ 48. The Sergeants allege that Carrington informed them that having a repayment plan with the HOA would be "sufficient." *Id*. Thus, the Sergeants negotiated a repayment plan with the HOA, and the parties rescheduled foreclosure mediation for December. *Id*. On December 15, 2015, Carrington denied the latest modification application because of the HOA lien. *Id*. ¶ 50.

In April 2016, the parties participated in a mediation session. After the mediation, the mediator, attorney Jeffrey Bean, certified that the parties mediated in good faith. Dkt. 5-3 at 4. As a result of the mediation, the Sergeants allege that the parties agreed to a modification plan with monthly payments around $1,700. *Id*. ¶ 54. On April 20, 2016, Carrington e-mailed the Sergeants terms for a three-month temporary payment plan

("TPP") with payments of $1,765.25. *Id*. On April 25, 2016, the Sergeants received a letter from Carrington increasing the monthly TPP payments to $2,007.85. *Id*. ¶ 55.

In October 2016, the Sergeants entered into a permanent loan modification with monthly payments of $1,760.72. *Id*. ¶¶ 57–60.

After entering the agreement, the Sergeants continued to have problems with Carrington. The Sergeants allege that they timely made their November and December payments. Dkt. 2, ¶¶ 65–66. However, in the January 5, 2017, statement, Carrington stated that the Sergeants failed to pay both the December 2016 and January 2017 payments. Dkt. 2-2. As a result of this alleged failure, the Sergeants owed $6,968.90 inclusive of late fees. *Id*. The Sergeants allege that their January statement showed a "mortgage payment for February 1, 2017 [of] $6,968.90 without any explanation." AC, ¶ 64.

On January 6, 2017, Carrington sent the Sergeants a letter threatening acceleration of the loan and foreclosure. *Id*. ¶ 66; Dkt. 2-3. The Sergeants sent multiple letters to Carrington requesting an explanation for the alleged default and threatened foreclosure. Dkt. 2, ¶¶ 70–72. On January 26, 2017, Carrington sent a letter to the Sergeants stating that the last payment on the account was received January 5, 2017 and that the amount owing on February 1, 2018 was $1579.99. Dkt. 2-4. The Sergeants paid the new amount of $1579.99. AC, ¶ 69. On February 13, 2017, Carrington sent the Sergeants a letter conceding that the Sergeants made their December and January payments and that the threatened foreclosure letter was "autogenerated." Dkt. 2-5. The letter also stated that Carrington incorrectly sent a letter stating that the February payment had been reduced to

$1579.99 and requested that the Sergeants timely pay the difference of $192.68. *Id*. The Sergeants immediately paid $192.68. AC, ¶ 69.

Even though the Sergeants immediately paid what Carrington requested, the March statement from Carrington indicated a total due amount of $2698.57, which is the sum of the regular monthly payment of $1772.67, a property inspection fee of $25, and an overdue amount of $900.90. Dkt. 2-6. The Sergeants filed the initial complaint shortly after receiving this statement. Dkt. 1.

## III. DISCUSSION

### A. Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed. *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts,* 717 F.2d 1295, 1301

(9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**B. CPA**

The five elements required to establish a violation of the CPA are: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

In this case, Carrington argues that the Sergeants have failed to allege an unfair or deceptive act or practice that adversely affects the public. Dkt. 42 at 5–12. The Sergeants support the first two elements of their CPA claim by alleging Carrington engaged in certain improper acts throughout the entire relationship and by alleging a violation of RCW 61.24.163. AC, ¶¶ 97–98. Regarding the public interest element, the Sergeants allege that Carrington is a large company with the potential to impact the public. *Id*. ¶¶ 99–100.

**1. RCW 61.24.163**

"A *per se* unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge*, 105 Wn.2d at 786. The consumer protection act provision of Washington's Deed of Trust Act ("DTA") provides in relevant part as follows:

> It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163 . . . .

RCW 61.24.135(2). In turn, RCW 61.24.163 outlines a foreclosure mediation program wherein certain borrowers in default may qualify to mediate with the beneficiary before foreclosure. The statute requires that (1) the parties mediate in good faith and (2) the mediator certify in writing that the parties mediated in good faith. RCW 61.24.163(7)(b)(iii), (12)(d).

In this case, the Sergeants allege that Carrington failed to mediate in good faith, AC ¶¶ 97–98, despite the mediator certifying that both parties mediated in good faith, Dkt. 5-3 at 4. The Sergeants provide no authority for their position and fail to provide any plausible argument that this is a reasonable extension of current law. In the absence of any allegation that the mediator was biased or otherwise engaged in some act that undermines the veracity of his certification, the Sergeants' argument is wholly without merit. Therefore, the Court grants Carrington's motion on the Sergeants' *per se* CPA claim based on a violation of RCW 61.24.135.

To the extent that the Sergeants rely on violations of 12 C.F.R §§ 1024.38 and 1024.41 to establish a *per se* violation, Dkt. 44 at 8, these allegation are not in the complaint, and the Sergeants may not rely on new allegations in their response to supplement deficiencies in the complaint. "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401

(N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001). The Court will grant the Sergeants leave to amend to add these allegations because (1) trial is over ten months away, (2) Carrington has failed to show that any amendment to include these alleged violations would be futile, *see* Dkt. 45, and (3) the Sergeants cited the law governing leave to amend, Dkt. 44 at 6.

**2. Other Acts**

The first two elements of a CPA claim may also "be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred in the conduct of any trade or commerce." *Hangman Ridge*, 105 Wn.2d at 785–86. Carrington contends that the Sergeants "do not even attempt to plead that Carrington's particular conduct had the capacity to deceive or to be unfair to a substantial portion of the public." Dkt. 42 at 8. The Court agrees because the claim fails to address these two elements. *See* AC, ¶¶ 97–98. Therefore, the Court grants Carrington's motion on this issue and dismisses the Sergeants' CPA claim.

Regarding leave to amend, the Court finds that leave to amend is appropriate because amendment would not be futile. For example, the Sergeants could allege that an "autogenerated" letter threatening acceleration of the debt and foreclosure when the Sergeants were current on their loan payments could be considered an unfair and deceptive act. This act could also have the potential to impact a substantial portion of the public if Carrington has the letter set to automatically generate for every borrower with a loan modification. Therefore, the Court grants the Sergeants leave to amend their CPA claim.

**C. ECOA**

The law of this case is that "it is not a violation of § 1591(d)(1) if a creditor fails to provide notice to an applicant in default." Dkt. 33 at 7. The Court recognizes the Sergeants' objection to this conclusion. The Court, however, finds no reason to reconsider this conclusion and grants Carrington's motion on this claim. The Sergeants' ECOA claim is dismissed as a matter of law.

**D. Outrage**

To state a claim for outrage, plaintiffs must allege: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. State*, 113 Wn.2d 612, 630 (1989). Although these three elements are questions of fact for the jury, the Court must initially "determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* "The conduct in question must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted).

In this case, Carrington moves for judgment on the Sergeants' claim because they have failed to allege extreme and outrageous conduct. Dkt. 42 at 14–16. The Court agrees. Both the Washington Supreme Court and courts in this district have recently addressed outrage in home loan modifications. *See, e.g.*, *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775 (2014); *Montgomery v. SOMA Fin. Corp.*, C13-360 RAJ, 2014 WL 2048183 (W.D. Wash. May 19, 2014); *Vawter v. Quality Loan Serv. Corp. of*

*Washington*, 707 F. Supp. 2d 1115 (W.D. Wash. 2010). In *Montgomery*, the court held that "the allegation that [the bank] induced the [borrowers] to default and then attempted to foreclose on the property plausibly alleges extreme or outrageous conduct." *Montgomery*, 2014 WL 2048183 at *7. The Sergeants attempt to compare Carrington's letter threatening acceleration and foreclosure to the facts of *Montgomery* by arguing that Carrington failed to rectify a situation that it created. Dkt. 44 at 12–13. This comparison fails. Once the Sergeants informed Carrington of the letter, Carrington promptly sent a letter correcting the mistake and giving a thorough explanation for the mistake. Dkt. 2-5. These facts do not rise to the level of inducing default and then initiating foreclosure.

Instead, the facts as alleged are more similar to those addressed in *Lyons* and *Vawter*. In *Lyons*, the Washington Supreme Court affirmed summary judgment on the plaintiff's outrage claim because her "allegations [were] not so outrageous that they shock the conscience or go beyond all sense of decency." 181 Wn.2d at 793. The plaintiff completed a loan modification that transferred the interest in the home to another lender. *Id*. at 781. Despite the transfer of the interest, the trustee failed to confirm the proper beneficiary and failed to suspend the trustee's sale. *Id*. The court concluded that "[w]hile perhaps the actions might have violated the DTA and could support a claim under the CPA, the acts are not sufficiently outrageous to support a claim for outrage." *Id*. at 793.

Likewise, in *Vawter*, the court concluded that the plaintiff failed to plead "factual allegations sufficient to give rise to a genuine issue regarding whether [defendants'] conduct was so extreme as to satisfy the first element of their claim." 707 F. Supp. 2d at

1128. The court found that defendants' "actions in connection with the nonjudicial foreclosure process, as alleged by the Vawters, may be problematic, troubling, or even deplorable, but these actions do not involve physical threats, emotional abuse, or other personal indignities aimed at the Vawters." *Id*.

In this case, the Sergeants have alleged facts that are troubling or possibly deplorable. The allegations, however, do not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Dicomes*, 113 Wn.2d at 630. Therefore, the Court grants Carrington's motion to dismiss the Sergeants' outrage claim.

The Court must also address the Sergeants' meritless reliance on bankruptcy law. "When the automatic stay that accompanies a bankruptcy filing is violated, the bankruptcy petitioner is entitled to recover damages and attorneys' fees." *In re Snowden*, 769 F.3d 651, 654 (9th Cir. 2014) (citing 11 U.S.C. § 362(k)(1)). Emotional distress damages are recoverable "if the bankruptcy petitioner '(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).'" *Id*. (citing *In re Dawson*, 390 F.3d 1139, 1149 (9th Cir. 2004)). In this context, the court must only consider whether defendant violated the automatic stay. This is significantly different than considering whether defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

as atrocious, and utterly intolerable in a civilized community." *Dicomes*, 113 Wn.2d at 630. The Sergeants fail to present any plausible argument for the proposition that the Court should look to federal bankruptcy law to interpret the state tort of outrage. Therefore, the Court concludes that the Sergeants' argument on this issue is wholly without merit.

Finally, the Court must determine whether to grant the Sergeants leave to amend this claim. The Court is unable to conclude that any amendment would be futile. The Court, however, forewarns the Sergeants that additional allegations of outrageous conduct must be asserted. If the Sergeants merely reformulate the current allegations, then they may face monetary sanctions for Carrington having to respond to the reformulated claim that has already been dismissed. With this caveat, the Court grants the Sergeants leave to amend.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Carrington's motion for judgment on the pleadings (Dkt. 42) is **GRANTED**, the Sergeants' ECOA claim is dismissed with prejudice, the Sergeants' CPA and outrage claims are dismissed without prejudice, and the Sergeants are **GRANTED** leave to amend their CPA and outrage claims. An amended complaint shall be filed no later than March 30, 2018.

Dated this 23rd day of March, 2018.

BENJAMIN H. SETTLE
United States District Judge